FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 08, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   v.<br><br>MOISES PEREZ-MARTINEZ,<br><br>               Defendant. | NO. 1:19-CR-02013-SAB-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Before the Court is Defendant's Motion to Dismiss, ECF No. 41. A hearing on the motion was held on June 3, 2020, in Yakima, Washington. Defendant was present and represented by Paul Shelton. He was assisted by Spanish and Zapotec interpreters. The United States was represented by Richard C. Burson.

An Indictment was filed on March 19, 2019, charging Defendant with Alien in the United States After Deportation in violation of 8 U.S.C. § 1326. ECF No. 1. The Indictment alleged that Defendant had been "denied admission, excluded, deported or removed from the United States on or about April 13, 2014, at Calexico, California." *Id*.

Defendant now moves to dismiss the Indictment, asserting the April 2014 removal was fundamentally unfair because his due process rights were violated, and he suffered prejudice as a result. He maintains that without a valid removal order, the United States cannot prove an essential element of the § 1326 charge.

### Facts

In April 2014, Defendant was removed from the United States, pursuant to

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1**

an April 13, 2014 removal order that was the result of an expedited removal proceeding. On April 11, 2014, Defendant was found by Border Patrol agents about two miles from the border near Nogales, Arizona. Because he lacked documents permitting him to enter the United States, he was transported to the border patrol station for processing. He was held in a large holding cell for two days. Eventually, Nicholas Schram, a Border Patrol Agent, brought Defendant out for processing, asked him questions in Spanish, and told him that he needed to sign some papers if he wanted to get out of detention. During this meeting, Defendant told Agent Schram that he spoke Zapoteco. Agent Schram appeared to understand this but continued to speak to Defendant in Spanish. The conversation was not translated into Zapoteco.

In his Affidavit, Defendant explained that Agent Shram asked him several questions, but he did not understand most of them because at that time he could only speak and understand very basic and simple word in Spanish. ECF No. 65-1. After Agent Schram finished questioning Defendant, he handed him some papers to sign. *Id.* Agent Schram did not read the papers to him before Defendant signed them; did not give him an opportunity to review the papers before he signed them; did not explain to him what he was signing; did not explain the consequences of signing the papers; did not indicate that Defendant was in formal removal proceedings; did not explain that if he was ordered removed, he could be barred from re-entering the United States for up to five years; did not explain to him whether he was eligible to withdraw his application for admission; and did not explain to him whether there was any relief Defendant could apply for to avoid an order of removal. *Id.* Defendant states the meeting with Agent Schram lasted only about five minutes. *Id.*

Agent Schram created an I-867A Sworn Statement form (the Jurat), which indicates that he had read the statement back to Defendant in Spanish. He told Defendant to initial the form, which Defendant did. Defendant also signed a I-

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 2

867B form, indicating that Defendant either read his statement or had it read to him.

At the hearing, the United States represented that Agent Schram would testify that he does not remember whether he read the statement back to Defendant before he had him sign it, but most likely it did not happen due to the time demands placed on immigration agents at the processing center.

## Expedited Removal Proceedings

"An expedited removal proceeding under 8 U.S.C. § 1225 allows immigration officers to (1) determine whether certain aliens are inadmissible; and (2) enter removal orders, generally without hearing or further review." *United States v. Raya-Vaca*, 771 F.3d 1195, 1199 (9th Cir. 2014). Two classes of individuals are subject to expedited removal proceedings: (1) aliens "arriving" in the United States; and (2) aliens who have entered the United States who are a) physically present in the U.S. without having been admitted or paroled; b) are discovered within 100 air miles of the U.S. border; and c) cannot establish they have been "physical present in the U.S." for the fourteen days prior to the encounter with immigration authorities. *Id.* All such aliens are deemed "applicants for admission" into the United States, regardless of whether they seek to enter a port of entry or have already entered the country. 8 U.S.C. §1225(a)(1); *Raya-Vaca*, 771 F.3d at 1199.

During an expedited removal proceeding, an immigration officer conducts an inspection and determines whether the alien is inadmissible because the alien (1) has made a material misrepresentation to gain admission into the United States, (2) has "falsely represent[ed]" himself to be a United States citizen, or (3) does not possess a "valid entry document." *See* 8 U.S.C. § 1225(a)(3), (b)(1)(A)(i); *see also id.* § 1182(a)(6)(C)(i), (a)(6)(c)(ii)(I), (a)(7)(A)(i).

When making a finding of inadmissibility, the examining immigration officer must: (1) "create a record of the facts of the case and statements made by

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 3

the alien;" (2) "shall ... have the alien read (or have read to him or her) the statement;" (3) "shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal; and (4) give the alien an opportunity to respond to those charges in the sworn statement." 8 C.F.R. § 235.3(b)(2)(i); *Raya-Vaca*, 771 F.3d at 1199. If the officer determines the alien to be inadmissible, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An expedited removal order is not subject to administrative appeal unless an alien professes a fear of persecution or claims to be a lawful permanent resident (LPR). § 1225(b)(1)(C). The Attorney General, however, has the discretion to provide a type of statutory relief to certain aliens: withdrawal of application for admission. § 1225(a)(4). When an individual is permitted to "withdraw" his application for admission, he may leave voluntarily with no removal order, resulting in no formal immigration consequences. *See* 8 C.F.R. § 1235.4.

## 8 U.S.C. § 1326

For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish the defendant "left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011).

A defendant charged under § 1326 has a due process right "to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). The "Due Process Clause applies to all who have entered the United States—legally or not." *Raya-Vaca,* 771 F.3d at 1203.

To sustain a challenge to an indictment under § 1326, a defendant must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 4

"improperly deprived [him] of the opportunity for judicial review"; and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d). To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the "deportation proceeding violate[d] [his] due process rights" and that the violation caused prejudice. *United States v. Leon–Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994).

"It is long-settled that a competent translation is fundamental to a full and fair hearing. If an alien does not speak English, deportation proceedings must be translated into a language the alien understands." *Perez–Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000). Before a waiver can be considered knowing and intelligent, the Ninth Circuit requires evidence that a detainee was "able to understand the questions posed to him." *Id*. A deportation officer's "feeling" that a detainee understood is insufficient to meet the government's burden. *Id.*

### Analysis

Initially, the Court finds that the record demonstrates that in 2014, Defendant was unable to understand the questions posed to him by Agent Schram. At the hearing, it was apparent that even in 2020, Defendant needed the assistance of the Zapotec interpreter to understand the proceedings. Thus, the Court finds as a matter of law that the expediated removal proceeding was fundamentally unfair because the proceedings were not translated into a language that Defendant understood.

Additionally, Defendant has shown that the 2014 removal order was fundamentally unfair and thus, invalid. The statute governing expedited removal proceedings does not afford an alien the opportunity for administrative or judicial review. *Raya-Vaca*, 771 F.3d at 1202. Thus, Defendant has met the first two elements under § 1326(d)/

   1.   *Whether a Due Process violation occurred*

For purposes of this motion, the Court will assume that Agent Schram did

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 5

not read the statement back to Defendant before he had Defendant sign the I-867B form. Defendant argues this is a clear violation of the Due Process Clause.

The United States asks the Court to change the legal landscape as set forth in *Raya-Vaca*, and find that while there is a presumptive violation of an alien's due process rights when their statement is not read back to them before they are asked to sign the declaration, such presumption can be rebutted by fact finding that shows the right was not necessarily violated because the agent had done a good job taking his time with the interview and explaining the process to the alien. Stated another way, even if the regulation requiring that the statement be read back to the alien is not followed, the Court should look at the totality of the circumstances, including everything the agent did prior to and after completing the Jurat, in determining whether an alien's due process rights were violated. Under this analysis, steps taken by the agent could possibly cure any violation of the regulation.

In *Raya-Vaca*, the Ninth Circuit held that any failure to provide an alien the opportunity to review the sworn statement constitutes a violation of the alien's due process rights, without regard to whether the alien was prejudiced by this failure. 771 F.3d at 1205 ("Because the regulatory violation here constituted a denial of Raya-Vaca's right to notice and an opportunity to respond, no showing of prejudice is necessary to establish a due process violation."). The Court is bound by and agrees with the holding and reasoning in *Raya-Vaca*. Based on Defendant's Affidavit and the United States' concessions, the Court finds that the forms complete by Agent Schram were not explained or read back to Defendant. As such, Defendant's due process rights were violated.

   1. *Whether the due process violation prejudiced Defendant*

Because the Court has concluded Defendant satisfied the first requirement for showing that his 2014 removal order was fundamentally unfair, the Court must determine whether Defendant suffered prejudice as a result of the entry of the

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 6

order. *See Raya-Vaca*, 771 F.3d at 1206. Defendant argues he had plausible grounds for relief from removal in the form of withdrawal of his application for admission.[1]

A defendant need not conclusively demonstrate he or she would have received relief to show prejudice but must show only there were "plausible grounds for relief." *United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003). In *Raya-Vaca*, the Ninth Circuit set forth a two-step analytical framework for assessing whether a defendant had plausible grounds for relief from removal. 771 F.3d at 1206. First, the Court must identify the factors relevant to the agency's exercise of discretion for the relief being sought. *Id*. Courts have considered the six factors set forth in the Inspector's Field Manual in determining whether relief was plausible. These factors are: '(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id.* at 1207 (citation omitted). The Inspector's Field Manual indicates that withdrawal should "ordinarily' not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id*.

Second, the Court determines, in light of the factors relevant to the form of relief being sought and based on the unique circumstances of the defendant's own case, whether it was plausible that the agency official considering the defendant's case would have granted relief from removal. *Id*. at 1206.

---

[1] Even though Defendant did not formally apply for admission to the United States, he is considered to have been an applicant for admission and as such was eligible for "withdrawal of application for admission." *See* 8 U.S.C. § 1225(a)(4).

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 7

Plaintiff has shown that in 2014, "some evidentiary basis on which relief could have been granted" existed: (1) his had a lack of prior reentries; (2) no prior findings of inadmissibility; (3) no evidence of obvious or deliberate fraud; (3) lack of criminal history and (4) statistics regarding the number of people who are given the opportunity to withdrawn their application. While he was in good health and did not have any pending petitions for legal status, this is not enough to overcome a finding of plausibility of relief.

Defendant has met his burden of showing that his due process rights were violated and that he could plausibly have been granted relief in the form of withdrawal of his application for admission. As such, the 2014 removal order is invalid and cannot serve as the predicate for his conviction under 8 U.S.C. § 1326.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, ECF No. 41, is **GRANTED**.

2. The Indictment filed on March 19, 2019, ECF No. 1, is **DISMISSED**, with prejudice.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, furnish copies to counsel and **close** the file.

**DATED** this 8th day of June 2020.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** ~ 8